117 So.2d 180

Morris TAYLOR et al.

v.

PEOPLES FERTILIZER CO.

I Div. 814.

Supreme Court of Alabama.

Oct. 15, 1959.

Rehearing Denied Jan. 21, 1960.

**244**

C. LeNoir Thompson, Bay Minette, for appellants.

Chason & Stone, Bay Minette, for appellee.

STAKELY, Justice.

On the motion to strike the transcript and dismiss the appeals.

In this case the appeals were taken by Annis Parsons Moorer, Golda Parsons Friedhoff, Nettie Parsons Williams and Margaret Parsons Griffin from a final decree of the Circuit Court of Baldwin County, in Equity, to this court on December 22, 1958, and by Vada Parsons Potts from the said decree to this court on December 29, 1958.

The transcript of the record was filed in this court on March 4, 1959, more than sixty days after the taking of the appeals.

On March 18, 1959, the appellee filed its motion to strike the transcript of record and dismiss the appeal taken by Annis Parson Moorer, Golda Parsons Friedhoff, Nettie Parsons Williams and Margaret Parsons Griffin. It also filed on the same day its motion to strike the transcript of record and dismiss the appeal taken by Vada Parsons Potts. Among other grounds, the motion to strike is based on the failure of the appellants to request the trial judge to extend the time for filing the transcript in this court and no additional time was grant-ed the appellants in which to file the transcript of record.

On March 21, 1959, a motion was made to this court requesting this court to grant the appellants an additional sixteen days from February 20, 1959, to March 5, 1959, in which to file the transcript of record in this court. The motion was based on alleged sickness in the family of the attorney and his alleged trouble with his teeth due to abscesses in his teeth. Attached to this motion to this court is a copy of the motion filed with the trial court and a denial of the motion made by the trial judge.

The provisions and requirements of Supreme Court Rule 37, as amended (263 Ala. XXI, 1957 Red Supplement to the Code of Alabama, p. 107), are plain and unequivocal in stating that, "in equity cases the transcript shall be filed within sixty days of the taking of the appeal" unless the trial judge has extended the time for filing such transcript of record for good cause shown not to exceed thirty days and if such time is so extended by the trial judge, thereafter the Supreme Court may extend the time for the filing of the transcript of record for good cause shown upon petition in writing of which the adversary counsel must have ten days notice. Rule 37, as amended, contains the following:

"* * * The application to the trial judge and a ruling thereon is a prerequisite to making the application to this court, unless it be shown that the trial judge was unavailable or that the application to him for an extension was not made for a good and sufficient reason * * *."

The appellee takes the position that this court is without authority to extend the time for the filing of the transcript of record unless such time was first extended by the trial court. We think this position is correct, unless the application to this court for an extension shows that the trial judge was unavailable or was not made for a good and sufficient reason.

The motion made to the trial court for an extension of time was made after the transcript had been filed in this court but within thirty days from the aforesaid sixty day period, that is within ninety days after the appeal had been taken and was made on the ground, among other grounds, that the illness of the family of the attorney taking the appeal including not only his children and his wife but also serious dental troubles of the attorney resulting from abscesses in his teeth, prevented him from filing his motion in the trial court earlier. The ruling of the trial court on the motion to extend the time for filing the transcript in this court fails to show the basis on which the trial court denied the motion, but the motion was filed with the trial court before the case was submitted in this court or any other action had been taken by this court in the case.

It seems to us that the spirit of the rule, where the motion is made in the trial court, even though the transcript had been filed in this court, is sufficient to give the trial court jurisdiction to pass on the motion for an extension of time in the event no submission had been made in this court or any other action had been taken by this court, as set forth above. We think that the allegations which are sworn to showing sickness in the family of the attorney for the appellants and his own dental trouble suffered by abscesses from his teeth, are sufficient grounds for the trial court to have granted an extension of time. Accordingly we have reached the conclusion that the prerequisite to a consideration in this court of the motion here to extend the time for filing the transcript is sufficient to allow us to pass on the requested extension of time since the case had not been submitted or any other action taken by this court prior to the time the motion referred to was filed in this court. We accordingly grant such extension and shall proceed to a consideration of the case on its merits.

### On the Merits

The bill of complaint in this case was filed by the Peoples Fertilizer Company, a corporation, as complainant against Morris Taylor, Daisy Opal Taylor and Annis Moorer, as guardian of H. M. Parsons, a person of unsound mind, as respondents, in the Circuit Court of Baldwin County, in Equity, on November 27, 1956.

H. M. Parsons died and his death was suggested by his solicitor on July 12, 1957. The cause was revived against Prince Griffin, as executor of the estate of H. M. Parsons, deceased, and against Annis Parsons Moorer, Vada Parsons Potts, Golda Parsons Friedhoff, Nettie Parsons Williams and Margaret Parsons Griffin, as the heirs at law, next of kin and legatees under the last will and testament of H. M. Parsons, deceased. The cause was removed to the United States District Court in Mobile, Alabama, upon petition of Vada Parsons Potts but the cause was remanded by the United States District Court to the Circuit Court of Baldwin County on March 18, 1958. A decree pro confesso was rendered against Morris Taylor and Daisy Opal Taylor on February 26, 1957. The remaining respondents filed their answer on June 16, 1958. The cause proceeded to trial on the bill of complaint and the answer of the respondents.

The allegations of the bill as amended show in substance the following. The Peoples Fertilizer Company, the complainant, is a corporation organized under the laws of the State of Alabama with its principal place of business at Foley, Alabama. All of the respondents are resident citizens of Baldwin County, Alabama, and all over the age of twenty-one years. On April 6, 1955, H. M. Parsons was adjudged insane and on April 7, 1955, Annis Moorer was appointed as his guardian by the Probate Court of Baldwin County.

Morris Taylor was justly indebted to the Peoples Fertilizer Company on September 22, 1947. On this date a suit was filed by the complainant in the Circuit Court of Baldwin County. Service was had on Morris Taylor on September 24, 1947. At the time of the filing of such suit Morris Taylor was

the owner of certain real estate ·lying in Baldwin County and more particularly described in the bill of complaint.

The foregoing property had been acquired by Morris Taylor from John G. Murphy by warranty deed date February 28, 1945. This deed is recorded in the office of the Judge of Probate of Baldwin County in Deed Book 89 at page 92. In this deed Daisy Opal Taylor, one of the respondents and the wife of Morris Taylor, was named as the grantee. It is alleged on information and belief that such deed was made to her in order that she might hold such property in trust for Morris Taylor, who was the actual owner of the property. Daisy Opal Taylor and Morris Taylor, her husband, conveyed a portion of this property to James B. Crabtree by warranty deed dated November 15, 1946. This deed is recorded in the office of the Judge of Probate of Baldwin County, Alabama, in Deed Book 114, p. 102.

On September 4, 1947, James B. Crabtree and wife reconveyed the property which he had acquired to Daisy Opal Taylor, such deed being recorded in the office of the Judge of Probate of Baldwin County at Book 23, p. 140. It is alleged on information and belief that Daisy Opal Taylor was to hold this property in trust for her husband, Morris Taylor.

It is further alleged that while the above mentioned suit which had been brought by the complainant against Morris Taylor, was pending, Daisy Opal Taylor and Morris Taylor, her husband, entered into a scheme or plan with the aforesaid H. M. Parsons to defraud the complainant. It was agreed between Daisy Opal Taylor and her husband Morris Taylor on the one part and H. M. Parsons on the other part that Daisy Opal Taylor and Morris Taylor would convey to H. M. Parsons the property described in the bill of complaint. This property had two houses located thereon. It was further agreed between them that Daisy Opal Taylor and Morris Taylor would have the right to occupy and use, without rent, the house located nearest Bay Minette and

H. M. Parsons would have the right to occupy or rent out the other house and this was to continue for a period of ten years. At the expiration of the ten year period the entire property was to be sold by H. M. Parsons and the proceeds of such sale was to be divided equally between Morris Taylor and H. M. Parsons. It is further alleged that in accordance with such fraudulent agreement, Daisy Opal Taylor and Morris Taylor, her husband, executed a warranty deed to H. M. Parsons on April 27, 1948, conveying the aforesaid property in Baldwin County, Alabama. This deed was recorded in the office of the Judge of Probate of Baldwin County, in Deed Book 130, p. 63.

It was discovered that a mistake had been made in the description of said property and on May 10, 1948, Daisy Opal Taylor and Morris Taylor executed a deed of correction to H. M. Parsons, conveying the aforesaid property to H. M. Parsons. This deed was filed for record in the office of the Judge of Probate of Baldwin County in Deed Book 130, p. 183.

Subsequent to the execution and recording of the aforesaid deed of correction, complainant secured a judgment in its suit against Morris Taylor on September 27, 1948, in the sum of $5,342.71 and the costs of court. A certificate of this judgment was recorded in the office of the Judge of Probate of Baldwin County, Alabama, on October 1, 1948. No part of such judgment has ever been paid. H. M. Parsons has not conveyed any part of the property hereinabove referred to.

It is further alleged in the bill of complaint as amended that a short time prior to April 27, 1948, when the warranty deed was executed by Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons, Morris Taylor, Daisy Opal Taylor, his wife, and H. M. Parsons entered into an oral agreement that such deed would be executed for the purpose of hindering, delaying or defrauding complainant in its collection of money due the complainant by Morris Taylor and such deed was executed by Morris Taylor and Daisy Opal Taylor,

his wife, and accepted by H. M. Parsons for the purpose of hindering, delaying or defrauding the complainant.

After the demurrer of Annis Moorer as guardian of H. M. Parsons was overruled, answer of H. M. Parsons, a non compos mentis, by his guardian, Annis Moorer, was filed to the bill of complaint denying the various allegations of the complaint.

Subsequently the complainant amended its complaint by striking Annis Moorer as guardian of H. M. Parsons, a person of unsound mind, as a party respondent in said cause.

The bill prayed that upon a final hearing of the cause that the deed from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons dated April 27, 1948, and the deed from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons dated May 10, 1948, be declared null and void and of no force and effect and that an order be made by the court to the register to note on the margin of the record where such deeds are recorded that they have been declared null and void.

It is further prayed that Morris Taylor be decreed the owner of the title to the land which was conveyed in a deed from John G. Murphy and Nannie Murphy, his wife, to Daisy Opal Taylor or that Daisy Opal Taylor was holding the same in trust for Morris Taylor, her husband. It is further prayed that the court shall order the register to sell the aforesaid property described in order to satisfy the judgment recovered by the complainant together with the interest thereon.

The case was heard orally before the court and, in substance the court held that the deed from John G. Murphy and his wife to Daisy Opal Taylor dated February 28, 1945, conveying the property described in the bill of complaint was actually made to her in order to prevent the aforesaid land from being subject to the debts then existing of Morris Taylor and that there was no gift of said property to Daisy Opal Taylor and that the consideration for the property was paid by Morris Taylor and that Daisy Opal Taylor was actually holding title to said property for said Morris Taylor and that such title which he had in and to said property was subject to his judgment creditors.

It was further held by the court that the heirs of H. M. Parsons, deceased, have failed to show that they are the owners of that certain mortgage and the debt secured thereby and described in said mortgage from Daisy Opal Taylor and Morris Taylor, her hubsand to John G. Murphy, which mortgage is dated February 17, 1945, and recorded in the office of the Judge of Probate of Baldwin County. The court further held that the debt secured by the mortgage from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons dated November 15, 1946, and recorded in the office of the Judge of Probate of Baldwin County, Alabama, was paid by Morris Taylor to H. M. Parsons during his lifetime and that the heirs of H. M. Parsons, deceased, have no claim against said property under said mortgage. The court further held that at the time of the execution and delivery of the deed from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons, dated April 27, 1948, and at the time of the execution and delivery of the correction deed from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons dated May 10, 1948, Morris Taylor was indebted to the Peoples Fertilizer Company, a corporation, the complainant in this cause, and a suit had been filed thereon and that such indebtedness was reduced to judgment in the Circuit Court of Baldwin County on September 27, 1948, and that a certificate of such judgment was filed in the office of the Judge of Probate of Baldwin County and recorded in the office of the Judge of Probate of Baldwin County, such judgment being for $6,342.71 and costs of court.

The court further held that the aforesaid deeds to H. M. Parsons, above referred to,

were executed and delivered by Daisy Opal Taylor and Morris Taylor, her husband, and were accepted by H. M. Parsons for the purpose of hindering, delaying or defrauding the Peoples Fertilizer Company, the complainant in this cause.

The court further held that since Morris Taylor is now indebted to the Peoples Fertilizer Company, a corporation, in the sum of $6,342.71 with interest, the land described in the bill of complaint together with the improvements thereon should be sold for the satisfaction of such judgment, unless such judgment with interest thereon is paid within a period of thirty days as set forth in the decree of the court.

In a subsequent decree dated December 12, 1958, the court decreed that since Morris Taylor had failed to comply with the decree of the court rendered on November 4, 1958, in that he has failed to pay the Peoples Fertilizer Company the amount due such company, the register shall proceed to advertise the property and sell the same. Subsequently Margaret Parsons Griffin, Annis Parsons Moorer, Golda Parsons Friedhoff, Nettie Parsons Williams and Vada Parsons Potts, respondents, brought their appeals to this court.

The proof showed in substance the following. John G. Murphy and Nannie Murphy, his wife, conveyed the property described in the bill of complaint to Daisy Opal Taylor on February 28, 1945, Morris Taylor, the husband of Daisy Opal Taylor, testified that he paid the consideration to John G. Murphy and put the title in the name of his wife because at that time he owed money that he was unable to pay and he had the deed to his wife recorded. Daisy Opal Taylor testified that she did not buy the land from John G. Murphy, but it was bought by her husband, Morris Taylor, who paid the consideration and that her husband did not give the property to her. Her husband put the title in her name because he owed some money and she never intended to claim ownership of the land. We do not find in the record where this evidence is contradicted by any one.

On February 17, 1945, Daisy Opal Taylor and Morris Taylor, her husband, executed a mortgage to John G. Murphy to secure an indebtedness of $3,000. The appellants claimed to be the owners of this mortgage through H. M. Parsons, but the debt secured thereby and such mortgage was never shown to have been transferred to H. M. Parsons.

Appellants also claim under a mortgage from Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons dated November 15, 1946. This mortgage was to secure a debt of $2,500. The appellants offered in evidence five $500 notes and chattel mortgages which are payable to H. M. Parsons, but each of which contains recitals that the Baldwin County Bank had the right of foreclosure. Neither this mortgage nor the mortgage first referred to has ever been foreclosed.

The appellee offered in evidence a receipt executed by H. M. Parsons on September 10, 1948, subsequent to the date of both of the above noted mortgages. This receipt says that all mortgages, both on and off the record, have been paid and James Crabtree, who was a witness to such receipt, testified that such receipt was so executed by H. M. Parsons.

The appellants claimed James C. Crabtree was an interested party and therefore his testimony is not admissible because he once owned two acres of the land in question. The two acres mentioned were deeded to him on November 15, 1946, but he reconveyed such land to Daisy Opal Taylor on September 4, 1947.

Morris Taylor testified that he paid the consideration for the conveyance from James Crabtree to his wife and he did not make any gift of the property to her. His wife testified that she was taking the title to this land for Morris Taylor and according to her testimony, she claimed no interest in it.

The suit was filed by the Peoples Fertilizer Company against Morris Taylor on September 22, 1947, and judgment was rendered in its favor on September 27, 1948. This suit was filed on notes executed by Morris Taylor to the Peoples Fertilizer Company, one dated February 26, 1946, and the other dated February 8, 1947. Both of these notes were executed before the alleged fraudulent conveyances, hereinafter referred to, were made and this suit was pending when such deeds were made by Daisy Opal Taylor and Morris Taylor, her husband, to H. M. Parsons on April 27, 1948, and on May 10, 1948.

The instant suit was filed on November 27, 1956, against Morris Taylor, Daisy Opal Taylor and Annis Moorer, as the guardian of H. M. Parsons, a person of unsound mind, claiming fraud in the execution of such deeds.

Morris Taylor testified that he told Mr. Chason about such transaction just before the present suit was filed but he did not tell him about such transaction until after they had double crossed him and had done what they agreed not to do. As stated before, this proceeding was revived against the appellants as heirs of H. M. Parsons and also against the executor of such estate on January 21, 1958. The proof showed that the debt due by Morris Taylor to the appellee had not been paid.

James Crabtree testified that he was at the home of Morris Taylor when the attorney for appellants and H. M. Parsons came there, that he was in an adjoining room with the door open and heard Mr. Parsons tell Morris Taylor that he thought that the attorney had figured out a way for Morris to save his property, that they were to change the title to the property to someone, that Morris Taylor came in and borrowed $20 from him.

Morris Taylor testified that after the original suit was filed by the Peoples Fertilizer Company against him, he made several attempts to unload the property described in the present suit, that just before

the first deed to H. M. Parsons was executed, the attorney for the appellants and H. M. Parsons came to his home at night while he was there with his wife and James Crabtree and his wife, that he left the door open and went into an adjoining room to talk to Mr. Parsons and to the attorney, that the attorney told him that his property could be saved. He outlined steps to be taken to effectuate this result.

As a part of the plan Morris Taylor had built a house on the property and had started to build another house. "Parsons was willing to take possession of the land in his name and give me one house for ten years to live in and he would take the other house and rent it out for ten years or to do whatever he wanted to do with it and he also had the use of the land. He would get the revenue out of it and take care of the taxes and at the end of ten years when it was figured that everything had blown over, Mr. Parsons would sell it and we would split the proceeds right down the middle. As a part of the plan it was suggested that from time to time I would give Mr. Parsons a month's rent and he would give me a receipt just to show if investigators should come around investigating the place. I was to pay some rent but it would be returned to me. It was understood that a deed would be prepared and we each were to give the attorney $100.00. My part of the fee was paid that night to the attorney in cash. I didn't have but $80.00 so I borrowed the other $20.00 from James Crabtree."

Morris Taylor further testified that soon after the plan to defeat his creditors, including the Peoples Fertilizer Company, were conceived, he executed a deed and delivered it to H. M. Parsons and that he executed such deed and delivered such deed for the purpose of defeating or defrauding the Peoples Fertilizer Company, one of the creditors at that time. He further testified that soon after the execution of the first deed, it was called to his attention that a mistake had been made in the de-

scription and that he executed another deed on May 10, 1948, to H. M. Parsons and that there was no consideration for this deed and that it was executed for the purpose of delaying or defrauding the Peoples Fertilizer Company.

Daisy Opal Taylor testified that she was at home with her husband on or about April, 1948, and that Mr. Crabtree and his wife were present and that the attorney for the appellants came to their home. She was in an adjoining room with the door open and that they called Morris out to talk to him and she heard Mr. Parsons tell Morris that the attorney had figured out a way to save his property. Morris came in later and stated that he owed the attorney $100 and he borrowed $20 from Mr. Crabtree and that soon after that she and Morris executed a deed to H. M. Parsons, conveying the land in question. Her testimony showed that she and her husband executed this deed for the purpose of hindering, delaying or defrauding the Peoples Fertilizer Company from collecting their debt on a suit pending at that time. She testified that she did not reveal the scheme to defraud the Peoples Fertilizer Company until about the time the present suit was filed, about ten years later.

The attorney, as a witness for the appellants, testified that he went to the home of Morris Taylor during the month of February, 1948, for the purpose of collecting an attorney's fee due him in the sum of $25 and that he collected such amount at that time. He testified that James Crabtree was present at that time and that Morris went into the room where James Crabtree was and came out and handed him $20. He had just handed him $5 before he went into the other room. He testified that Mr. H. M. Parsons went with him to the Taylor home on that occasion and that he went to show the attorney where to find Morris Taylor.

We have carefully considered the evidence in this case and think that it supports the allegations of the bill of complaint. When Morris Taylor purchased the property in question from John G. Murphy on February 28, 1945, he was heavily in debt and he decided to put the property in his wife's name. Both Morris Taylor and his wife, Daisy Opal Taylor, testified that this was done to prevent any creditor from levying on such property. While the law may presume that the property is given to a wife when the title is placed in her name, this is only a rebuttable presumption and we do not see how it can be rebutted any stronger than by the man and wife who are involved in the transaction. It is insisted by the appellants in brief that none of the testimony of Morris Taylor or his wife, Daisy Opal Taylor, or of James Crabtree can be considered because of the socalled "dead man's statute".—Title 7, § 433, Code of 1940. Their testimony in regard to the transaction with John G. Murphy could not come under the rule of this statute because H. M. Parsons was not a party to this transaction in any respect. Accordingly, it is uncontradicted that the property when purchased belonged to Morris Taylor and would be subject to his debts.

As to the contention that James Crabtree is precluded from being a witness, his only connection with the title was that he bought two acres of land from Morris Taylor on November 15, 1946, but he reconveyed it to Morris Taylor on September 4, 1947. At that time H. M. Parsons had not come into the picture so to speak, and certainly the testimony of James Crabtree would be competent. James Crabtree testified that he dealt with Morris Taylor and both Morris Taylor and his wife, Daisy Opal Taylor, testified that Morris Taylor paid the consideration for the reconveyance and that the property was again taken in the name of Daisy Opal Taylor because Morris Taylor was still in debt. This testimony is uncontradicted. Accordingly the property in question belonged to Morris Taylor as of September 4, 1947, and James Crabtree had no further interest in the property.

252

■ When the property was bought by Morris Taylor from John G. Murphy and his wife, he executed a mortgage to secure the purchase price of $3,000. The appellants appear to claim title under this mortgage but not only did the appellants fail to show an assignment of this mortgage to H. M. Parsons, but there was introduced in evidence a receipt dated September 10, 1948, signed by H. M. Parsons and witnessed by J. B. Crabtree, as follows:

"September 10, 1948.

"Received of Morris Taylor payment in full of all      Dollars for      debts owed to me, including all mortgages on & off record.

"H. M. Parsons
"Witness:
"J. B. Crabtree                    9/10/48"

As stated James Crabtree was a witness to this receipt and he testified that he saw H. M. Parsons sign the receipt and that he witnessed it at their request. Under this receipt the court accordingly correctly held that the mortgage had been paid and the court's decree which holds that the appellants have failed to establish their title to such mortgage is correct.

The appellants also claim that they have some title under a mortgage from Morris Taylor and his wife to H. M. Parsons which was dated November 15, 1946. As to this mortgage, there was introduced in evidence the receipt referred to above executed by H. M. Parsons on September 10, 1948, wherein it is recited that H. M. Parsons has received of Morris Taylor payment in full of all debts owed to him, including all mortgages on and off the record.

It will be observed that the first mortgage which was dated February 17, 1945, was due and payable $500 every six months or the entire mortgage would have been due in February of 1948. The other mortgage, the one to H. M. Parsons, secured a debt of $2500 and was payable in install-ments of $500 every six months and would have matured in May, 1949. H. M. Parsons did not die until June 30, 1957. Neither of these mortgages had been foreclosed during that time or approximately nine years from their date. Morris Taylor was still living on the property at the time H. M. Parsons died and their scheme was being carried out until H. M. Parsons lost his mind and his guardian was appointed for him. The guardian knew nothing about the scheme and began to institute proceedings to remove Morris Taylor from the property. It was then that Morris Taylor decided he would reveal the scheme and this suit resulted.

■ We do not see how all of the testimony of Morris Taylor, Daisy Opal Taylor or James Crabtree should be stricken from the record because of the dead man's statute, which prohibits testimony of an interested party of any transaction with a dead man. Testimony of these three witnesses as to the part played by the attorney for the appellants is certainly admissible testimony. Garrett v. Trabue, 82 Ala. 227, 3 So. 149; Kilgore v. Kimbrell, 231 Ala. 148, 163 So. 896. He could attempt to refute the evidence and he did try to a certain extent but by his own testimony there were some things which he did not deny. He did not deny that he went to the home of Morris Taylor a short time before the deed was executed, that he went there in the night time and found Mr. and Mrs. Crabtree there with Mr. and Mrs. Taylor. He did not deny that they were in an adjoining room and he called Mr. Taylor into the front room to talk to him. He did not deny that H. M. Parsons was there with him. He did not deny that they stayed for some length of time. He did not deny that he collected some money from Morris Taylor that night. In brief, according to his testimony, he agreed with almost all of the testimony given by these three witnesses until it involved him in a scheme to defraud the complainant in this case.

The evidence as given by Morris Taylor and his wife is certainly admissible evidence in that he took the title in his wife's name, when he bought the property from John G. Murphy, because he was in debt. When the suit was filed by the complainant in this cause against Morris Taylor, it resulted in a judgment, as aforesaid. Morris Taylor became afraid of the scheme that he had used up until that time of putting the property in his wife's name and according to his own testimony, he attempted to unload that property. He discussed the matter with H. M. Parsons. On the night in question, we have the legal testimony of Morris Taylor and his wife and James Crabtree that the attorney and H. M. Parsons came to the Taylor home. Certainly James Crabtree would be qualified to state anything that he heard. According to the testimony of James Crabtree he heard H. M. Parsons tell Morris Taylor that he thought that the attorney had figured out a way that Morris Taylor could save his property. The testimony of Morris Taylor as to the scheme which he had figured out is competent testimony since it occurred as a conversation between Morris Taylor and the attorney. There was one completed house and one uncompleted house on the property. According to the scheme Morris Taylor would be allowed to live in the completed house and H. M. Parsons would complete the other house and would rent it out for ten years to get his money back and H. M. Parsons would have the use of the land. It was observed by the attorney that a judgment would not be any good after ten years unless revived and the property could then be sold and they would "split the proceeds right down the middle." The attorney even talked about the matter of rent since a creditor might wonder why Morris Taylor was still living on the property after he had sold it and the plan was that Morris Taylor would pay the rent to H. M. Parsons and H. M. Parsons would give it back.

The testimony further showed that the attorney charged each of the parties $100 for his services in suggesting this scheme. Morris Taylor only had $80 in his pocket so he had to go in and borrow the other $20 from Mr. Crabtree. This is confirmed by John Crabtree. The record is silent as to whether Mr. Parsons ever paid his $100.

It seems likely that this scheme would never have come to light if Mr. Parsons had not lost his mind and it did not come to light for almost ten years.

In connection with the foregoing we think it well to refer to a number of propositions of law. We first refer to § 7, Title 20, Code of 1940, which in part provides that all conveyances in writing of any estate or interest in real property made with intent to hinder, delay or defraud creditors of their lawful debts, are void.

Any transfer of real property which is merely a simulated assignment or conveyance behind which a debtor may hide to enjoy the use of the property is void. In the case of Wolcott v. Titus, 238 Ala. 342, 191 So. 383, 385, it is stated:

"If it was not an actual sale and transfer of the debtor's property and title, but a mere simulated, colorable transfer intended as a mere cover behind which the debtor may hide to enjoy the use of the property and prevent creditors from subjecting it to the payment of debts, it is fraudulent and void and should be vacated and annulled. Robinett v. Murray, 219 Ala. 176, 121 So. 535, 537.

"After due consideration of the evidence we are of the opinion that the conveyance attacked by the bill falls within the latter class, and is fraudulent and void.

"We state, briefly, the reasons upon which this conclusion is rested.

"The defendants in their several answers to the bill made a general denial of the existence of the debt due from Titus to complainant Wolcott, but the evidence shows without dispute the existence of complainant's claim that it is just, due and unpaid, and that it antedated the conveyance from Titus to Godard. In fact Titus admitted the existence and bona fides of said indebtedness.

"This shown, the defendants, under the averments of their answer, had the burden of going forward with the evidence 'to show a real sale and transfer of the title and use of the property in payment of a bona fide existing debt in an amount not greatly disproportionate to the value of the property.' * * *"

■ This court has held that transactions to defeat creditors are viewed by the court with disfavor and the statute therefore should receive a liberal construction. Galloway v. Shaddix, 197 Ala. 273, 72 So. 617.

■ We further wish to note that in offering testimony on the trial of this cause, § 372(1), Title 7, 1955 Cumulative Pocket Part, Code of 1940, was observed with respect to objections to evidence. The court did not specially rule on the legality of any evidence, but under this statute we presume that the court considered evidence that was relevant, material, competent and legal. We must uphold the findings by the court when there is legal evidence before the court as if it were the verdict of a jury notwithstanding § 17, paragraph 1, Title 13, Code of 1940. Dougherty v. Hood, 262 Ala. 311, 78 So.2d 324.

■ Finally as we have often stated, where the trial court saw the witnesses and heard their testimony ore tenus, the decree of the court is presumed to be correct unless it is palpably wrong. Lovelace v. McMillan, 265 Ala. 290, 90 So.2d 822.

We have reached the conclusion that the decree of the court was correct and should be upheld.

Affirmed.

All the Justices concur.