215 So.2d 290

**Johnnie C. WATSON**

**v.**

**M. R. WATSON et al.**

**7 Div. 795.**

Supreme Court of Alabama.

Oct. 31, 1968.

Knox, Jones, Woolf & Merrill, Anniston, for appellant.

Geo. F. Wooten, of Dixon, Wooten & Boyett, Talladega, for appellees.

HARWOOD, Justice.

The proceeding below, in equity, was between the heirs-at-law of T. J. Watson, deceased. It sought the distribution of some $83,593.45 paid into court as condemnation awards, and the determination of the rights and title of the various heirs to lands at one time owned by T. J. Watson.

T. J. Watson died intestate on 2 April 1953, leaving surviving him seven children and his widow. The widow has since died and her estate has been administered.

Among his seven children were T. R. Watson, M. R. Watson, B. F. Watson, and J. K. Watson. These four brothers have

purchased the interests of all of the other children of T. J. Watson in his estate, except the interest of Genieve Watson Ellis, a daughter, and the interest of Johnnie C. Watson, a son of John Watson, one of T. J. Watson's seven children. John Watson died intestate on 1 December 1955, leaving as his heirs Johnnie C. Watson, and his widow Elizabeth C. Watson.

Genieve Watson Ellis, by her answer, admits that title in the estate of T. J. Watson is as set forth in the petition filed by the four brothers, T. R., M. R., B. F., and J. K. Watson.

Johnnie C. Watson is the appellant in this appeal. In his answer he denied the allegations of the ownership of the percentages in the condemnation award funds and in the land as alleged in the petition.

■ Among the witnesses testifying in the hearing below were Genieve Watson Ellis and John R. Ellis, her husband. Their testimony was contrary to their interests, and therefore not within the influence of Section 433, Title 7, Code of Alabama 1940. (Dead Man's Statute.)

The tendency of their evidence was to the effect that T. J. Watson had acquired prior to 1935, a considerable acreage of farm land. He was also president of a bank.

In the depression years of the early 1930's, T. J. Watson became financially embarrassed. The bank of which he was president became defunct, and he was considerably involved in other debts. He discussed turning everything he owned over to his creditors, moving away and starting anew. Instead, a partnership known as T. J. Watson and Sons, consisting of T. J. Watson and four of his sons, M. R., T. R., B. F., and J. K. Watson, was formed in 1935. Most of the land that went into the partnership was owned by T. J. Watson.

All of the partners were to contribute their efforts and energies to the partnership in an effort to pay off the debts and save the property.

All income from the operations went to the partnership, and all expenses such as taxes, repairs, insurance, farming costs, etc., were paid out of the partnership funds. From time to time additional land was purchased with partnership funds, title being placed in the names of the various partners for convenience.

In 1945, as a result of the work and efforts of the five partners, the debts had been paid and both the original property of the partnership and the land subsequently acquired had been saved from the claims of debtors.

Mrs. Genieve Watson Ellis testified that she had worked as bookkeeper for the partnership after its formation in 1935, and was familiar with the conduct of its affairs. The four brothers had worked diligently in the affairs of the partnership, while her father, T. J. Watson, furnished the direction.

In 1952, her father told her that since the efforts of his four sons in the partnership had resulted in the saving of the property, he was going to have deeds executed by all of the partners, including himself, conveying all of the partnership property to John R. Ellis as trustee, and solely for the purpose of Ellis' reconveying one-fifth interest in the partnership property back to each of the partners. It was Mrs. Ellis' understanding that her father discussed his plans, and the reasons therefor, with all of his other children.

Her father instructed J. K. Watson to have the deeds prepared, and later urged him not to put off the matter but to go ahead and have the deeds prepared.

The deeds from the partners and their wives, to Ellis, and from Ellis back to the partners were prepared and were signed and acknowledged in 1952, before J. I. Kirksey, a notary public. Mr. Kirksey also operated a store in Lincoln, Alabama. After the execution of the deeds by the partners to Ellis, as trustee, they were left in the hands of Kirksey.

The deeds by the partners to Ellis, as trustee, including the deed of T. J. Watson and his wife, contain the following recitals:

WITNESSETH: THAT WHEREAS, the undersigned, T. J. Watson, is a member of a partnership composed of B. F. Watson, M. R. Watson, T. R. Watson, T. J. Watson and J. K. Watson, doing business under the firm name and style of T. J. Watson and Sons, and

"WHEREAS, said partnership has during the course of years acquired various tracts of real estate in Talladega County, Alabama, including the real estate hereinafter described, same having been acquired with and paid for by funds of said partnership, and

"WHEREAS, for convenience, the deeds to said real estate have been taken in the individual names of the various partners, and the deed or deeds to the property hereinafter described was taken in the name of the undersigned T. J. Watson, and

"WHEREAS, the said property is actually owned by the partners in said partnership, above named, each owing an undivided one-fifth interest therein, and

"WHEREAS, said partners desire to vest the legal title to all of said property in said partners, in the proportion in which the equitable interest is owned by said respective partners, and

"WHEREAS, in order to accomplish this purpose, the partners have designated John R. Ellis as Trustee, said purpose to be effectuated by each partner conveying to said trustee the property owned by said partnership and standing in the name of such partner individually whereupon said trustee shall convey to each of said partners an undivided one-fifth interest in and to all of said partnership property, and * * *"

John R. Ellis testified to the effect that he married Genieve Watson in 1924, and since that time was familiar with the Watson family business affairs. In the early 1930's, T. J. Watson was insolvent, and formed the partnership with his four sons above mentioned in an attempt to save the property placed in the partnership. Ellis was never a member of the partnership.

Ellis knew of the work of the partners in their efforts to work the property free of debt, and described the situation as being "rugged" at times.

In 1952, T. J. Watson told him of his plans to have all of the partnership property conveyed to a trustee for the purpose of reconveying it to the five partners respectively a one-fifth interest in the partnership property. Ellis agreed, at T. J. Watson's request, to act as such trustee.

Mr. Ellis further testified that on 6 August 1952, he and his wife were ready to leave on a trip to Daytona Beach, Florida. He went by the store of T. J. Watson and sons in Lincoln, which store was operated by the partnership. T. J. Watson requested that before he left on his trip he and Mrs. Ellis go to the store of J. I. Kirksey and execute the deed by which he, as trustee, would convey to the respective partners one-fifth interest in the partnership property conveyed to Ellis as trustee.

Ellis went to Kirksey's store and there he and Mrs. Ellis executed the deed to the partners. This was some three weeks after the execution of the deeds by the partners conveying the partnership property to Ellis, as trustee. The Ellis' deed contained the same recital as did the deeds from the partners to Ellis pertaining to the basis for the executing of the deeds. This recital has already been set out, supra.

Mr. J. I. Kirksey, the notary public, testified that the various deeds were brought to him by Byron (B. K., we assume) Watson, and he took the acknowledgments of the respective signatories.

After the deeds by the partners to Ellis as trustee had been executed they remained in his possession and he was given no instructions as to delivery of the deeds.

On 6 August 1952, Mr. and Mrs. Ellis executed the deeds whereby Ellis, as trustee, conveyed the property to the respective partners. Earlier that day T. J. Watson had called Mr. Kirksey and asked him if Ellis had executed the deeds and he told Mr. Watson that all of the deeds had been executed except the Ellis deed. It was shortly after this conversation that Ellis appeared at Kirksey's store and executed the deed as trustee.

Mr. Kirksey testified that according to his best recollection all of the deeds were picked up by B. K. Watson after their execution.

Mrs. Ellis had previously testified that it was her father's habit to always call upon B. K. Watson, his eldest son, who had worked in the bank, to attend to chores such as paying taxes, preparing income tax returns for the partnership, and running "errands" for him. At any rate, all of the deeds were brought to the partnership store of T. J. Watson and Sons and placed in the safe of the partnership.

Mrs. Ellis also testified that on one occasion when she and her father were examining the papers in the store safe and saw the deeds herein involved, her father remarked he was "glad that was over."

The evidence shows that subsequent to the execution of deeds by the partners and by Ellis, as above set forth, T. J. Watson and wife joined with his four sons in the partnership and their wives in conveying an easement over the lands involved to the Southern Natural Gas Company, in conveying another easement to Talladega County, for a public road, and in conveying to John Watson certain lands involved in the deeds pertaining to the transaction with Ellis.

In a portion of its decree material to this review, the court awarded to Johnnie L. Watson a 4/140 (or 1/35) interest in the partnership lands and property, that is a 1/7 interest (there being seven heirs) in the 1/5 interest of T. J. Watson, deceased, in the partnership.

Appellant's assignment of error No. 1 is to the effect that the court erred in admitting into evidence over appellant's objection, the deed from John R. Ellis, trustee, and wife, to T. J. Watson and the four appellees conveying to each of the vendees a 1/5 interest in the partnership lands theretofore conveyed to Ellis as trustee.

Counsel argues that:

"All of the testimony concerning the admissibility of this deed and the transaction was from appellant B. F. Watson, son of T. J. Watson, whose interest in this matter was opposed to that of the estate of T. J. Watson and this testimony should have been barred by the so-called Dead Man's Statute, Title 7, Section 433, Code of Alabama. There was also evidence that this deed was recorded four days after the death of T. J. Watson and affirmatively shows this on the margin."

 In the first place, the court did not rule on appellant's objection to the reception of the deed in evidence, but merely noted the objection. This procedure was followed by the court throughout the hearing. The court was not bound to rule upon objections to testimony or evidence, and when he did not rule, but merely noted the objection, the presumption is that he considered only relevant, material, competent, and legal evidence. When there is legal evidence before the court under such circumstances to support the conclusions of the trial court, such conclusions will be upheld. Section 372(1), Title 7, Code of Alabama 1940; Taylor v. Peoples Fertilizer Co., 270 Ala. 243, 117 So.2d 180; Livingston v. Powell, 257 Ala. 38, 57 So.2d 521.

 This aside, the deed was duly signed by Ellis and his wife, and properly acknowledged before Kirksey, the notary public. This was established by the testimony of Ellis and Kirksey. While it was not recorded until after T. J. Watson's death, such delay would not affect its admissibility. The deed being signed, acknowledged, and recorded, and certified by the Probate

Judge, it was properly received in evidence, and we think later properly considered by the court because relevant to the issues. Section 104, Title 47, Code of Alabama 1940.

Counsel for appellees has set forth a number of additional reasons why this deed was properly considered by the court. We see no need to discuss these additional bases for the consideration of the deed by the court since the deed was admissible under Section 104 of Title 47, supra.

No merit attached to assignment of error No. 1.

Assignment of error No. 4 asserts that:

"The trial court erred in admitting into evidence complainants' Exhibit ten (10) over the objections of counsel for appellant Johnnie C. Watson."

Exhibit Ten was the deed by which T. J. Watson and his wife conveyed his lands to John R. Ellis as trustee. These lands constituted the great bulk of the property used in the partnership operations since 1935.

Again, the court did not rule on the objection to the introduction of the deed, but merely stated, "I'll note the objection."

The deed having been duly signed and acknowledged by the grantors, and recorded, the deed was properly received by the court for the same reasons as mentioned during our discussion of assignment of error No. 1. The question is therefore not on the admission of the deed, but whether it should have been considered by the court in reaching its conclusions.

Counsel for appellants in brief states:

"Counsel's objection specifically stated that the deed shows on its face that it was not recorded until after the death of T. J. Watson and that there was no evidence of delivery of this deed from the grantor to the Trustee."

■ Our recording statutes being "notice" statutes, the fact that the deed was not recorded until after the death of the grantor would not affect its consideration per se by the court.

■ While ordinarily delivery of a deed is made by the grantor giving the possession of the instrument to the grantee, such physical delivery is not necessary when a grantor's acts, or words, or both, clearly manifest an intended delivery of the deed. Delivery is a fact resting in intention and is to be determined from all of the acts and declarations of the parties relating thereto. Crosby v. Baldwin Co., 227 Ala. 122, 148 So. 814; Williams et al. v. Dent, 233 Ala. 109, 170 So. 202.

Clearly admissible and competent evidence tends to show that it was T. J. Watson's individual idea and plan to have himself and his four sons execute deeds to Ellis as trustee for the purpose of having Ellis reconvey to the partners a one-fifth interest each in the partnership property. He discussed this plan with his daughter, Mrs. Ellis, and most probably with his other children; he approached Mr. Ellis with the request that he serve as the trustee for executing his plan; he instructed his son B. K. Watson to have prepared the deeds necessary to carry out his plans; when these deeds were prepared, T. J. Watson and his wife executed the deed in question, which was left in possession of Kirksey, the notary public; thereafter he checked with Kirksey to determine whether all the parties had executed their respective deeds, and told Ellis of the execution of the deeds and subsequently, on 6 August 1952, reminded Ellis to execute his deed as trustee before departing on Ellis' trip to Daytona Beach; after the execution of the deed, T. J. Watson joined the other partners in conveying interests in the partnership lands, including the portion covered by the deed in question; upon looking at the deed, together with the deeds executed by Ellis when he and Mrs. Ellis were examining papers in the safe, T. J. Watson told his daughter he "was glad that was over."

■ All of the above, together with the recitals in the deed itself, can only be

deemed rationally to show T. J. Watson's intention to deliver the deed, and an effective delivery thereof. Assignment of error No. 4 is without merit.

Assignment of error No. 5 is to the effect that the lower court erred in receiving in evidence (and considering) the deed from John R. Ellis, as trustee, to T. J. Watson (Exhibit No. 11), by which Ellis, as trustee, conveyed to T. J. Watson a one-fifth interest in the property conveyed to him as trustee.

It is appellant's contention under this assignment that since the deed by T. J. Watson and wife to Ellis as trustee was a nullity because of non-delivery, Ellis as trustee, had no property of T. J. Watson to re-convey.

Since we have already concluded that the conveyance by T. J. Watson and wife to Ellis, as trustee, was valid and sufficient, including delivery, the basis of appellant's contention under assignment of error No. 5 fails.

■ Furthermore, Ellis had agreed to accept the trusteeship, and signed the deed in carrying out his duties as such trustee. As stated in First National Bank of Lincoln v. Cash, 220 Ala. 319, 125 So. 28:

"Acceptance of a trust is ordinarily presumed and may be inferred from the voluntary interference with the trust property or acts done in performance of the trust, and it is not required to be manifested by express words of acceptance."

Appellant's assignment of error No. 3 is to the effect that the lower court erred *in admitting* the pretrial deposition of B. F. Watson taken for discovery purposes, since B. F. Watson was present in court and testified as a witness.

The court did not rule on the objection but merely noted the objection, with the observation, "But it is very possible that a portion of his objection is good."

This cause being in equity, and the trial court having made no ruling in the instance, the presumption is that the court considered only such evidence as was relevant, material, and competent. Bessemer Theatres, Inc. v. City of Bessemer, 261 Ala. 632, 75 So.2d 651; Fox v. Webb, 268 Ala. 111, 105 So.2d 75, 67 A.L.R.2d 1007; Section 372(1), Title 7, Code of Alabama 1940.

■ Assignments of error 2, 6, 7, and 8, relate to conveyances signed by T. J. Watson and his four sons who comprised the partnership, conveying to various parties interest in the partnership lands. These instruments were all executed subsequent to the transactions with Ellis. These conveyances were properly for consideration by the court as tending to shed light on the intention to deliver, and the delivery, of the deeds in the Watson-Ellis transactions. Certainly they tended to show that T. J. Watson considered the deeds to have been delivered, and negatived appellant's contention that T. J. Watson retained a locus poenitentiae in the matter of the delivery of the deeds. See Slaten et al. v. Loyd, (Ala.Sup.), 213 So.2d 219.

Assignment of error No. 9 asserts error in the decree relating to the court's conclusions as to the interests of the parties to this action in the estate of T. J. Watson, particularly as to the interest awarded to Johnnie Watson.

Again, it is appellant's contention that Johnnie Watson, as to the lands of T. J. Watson, was entitled to ⅐ of T. J. Watson's land owned by Watson prior to the partnership arrangement, rather than ⅐ of his ⅕ partnership interest in such lands, for the reason there had been no delivery of the T. J. Watson and wife deed to Ellis, as trustee.

Counsel argues:

"T. J. Watson did not relinquish dominion over this deed. (Deed from T. J. Watson and wife to Ellis, as trustee.) He allowed it to remain with a notary public for 21 days without instructions

or authority. It was then placed in his partnership safe at his store for the rest of his lifetime and was removed and recorded after his death. * * * He reserved the *locus poenitentiae* of the deed * * *" (Par. ours.)

We have already expressed our opinion and conclusion that the facts and circumstances shown by relevant, proper, and legal evidence did show a delivery of the deed in question. We wish to note further, however, that the Ellis deed was placed in the partnership safe of T. J. Watson and Sons, not in "his" partnership safe, and that said safe was in the partnership store of T. J. Watson and Sons, not in the individual store of T. J. Watson. T. J. Watson thereby lost any locus poenitentiae he may have had over the deed for it thereby became the property of the partnership and T. J. Watson, even though he had access to the safe, could not lawfully have exercised individual control over the partnership deed.

Assignments of error 10 and 11 respectively assert alleged errors relative to the court's conclusions as to the interests of the parties in lands and property in question. Again, the basis of the arguments in support of these assignments pertains to the delivery of the deed by T. J. Watson and wife to Ellis as trustee. What we have written above is equally applicable to these assignments. We conclude they are without merit.

The Chancellor saw and heard the testimony ore tenus. There was legal evidence before the court sufficient to support his conclusions and decree. The decree is presumed to be correct. We find no basis in the record justifying a conclusion on our part that the decree is palpably wrong. In fact, under the legal evidence before the Chancellor, we are in full accord with his conclusions.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.