On return to Remand
This case is before us for the second time. In the first appeal, Payne v. Carver, 534 So.2d 566 (Ala. 1988), we held that we were "unable to determine the basis for the findings set out in the trial court's order or for the judgment of lack of delivery of the deed" and we remanded the cause to the trial court for the entry of an order consistent with our opinion.
 The Trial Court's Order On Remand
On June 3, 1988, the trial court filed an "ORDER CLARIFYING [ITS] ORDER AND JUDGMENT PURSUANT TO INSTRUCTIONS FROM THE SUPREME *Page 569 
COURT OF ALABAMA," in which it wrote:
 "This Court finds that there was not an unconditional delivery of the deed by Bart Payne to Ferris Payne. Therefore, the testimony of Ferris Payne that his father handed the deed to him and he in turn handed it to his mother, Lucy Payne, is either incorrect or incomplete. This Court finds from the evidence presented that the deed was either not delivered to Ferris Payne as he testified, or, if it was delivered to him, it was delivered on the condition that he return it to Lucy Payne and that she and her husband would retain possession and control over it by keeping it locked in the drawer of a buffet in their home.
 "This Court finds that the undisputed evidence is consistent with this holding and conclusion.
 "First, this Court considered the fact that Bart and Lucy Payne, on December 31, 1968 (eleven years after the 1957 deed to Ferris Payne), executed a deed conveying a right-of-way across the [disputed] property to Jefferson County as evidence that Bart Payne still considered himself the owner in fee simple of the [disputed] property at that time.
 "This Court also considered the fact that after Bart Payne suffered a stroke and became seriously ill, Ferris Payne, the grantee, and Lucy Payne, the mother and one of the grantors, rented a safety deposit box from the First National Bank of Jasper in both their names and placed the deed in that box. Ferris Payne still did not record the deed.
 "However, on August 8, 1975, the very day that Bart Payne died, the deed was taken from the safety deposit box at 1:05 p.m. and recorded at 3:01 p.m.
 "The vault access records of the First National Bank of Jasper indicated the signatures of both Ferris Payne and his mother, Lucy Payne, at the time of the visit at 1:05 p.m. on August 8, 1975. This Court finds from these facts that both Ferris Payne and his mother, Lucy Payne, visited the box in order to remove the deed.
 "This Court further finds from the evidence that the testimony of Ferris, even if believed, is insufficient as a matter of law in this instance to establish delivery in view of the evidence supporting a finding and conclusion that Bart and Lucy Payne did not intend to part with control over the deed until Bart Payne's death."
 Decision
It is from this judgment — that there was no effective or valid delivery of the deed from Bart Payne to Ferris Payne — that the instant appeal is brought. We reverse and remand.
We will not disturb the judgment of the trial court in a non-jury trial unless that judgment is clearly wrong or unjust or is unsupported by the evidence. CRW, Inc. v.Twin Lakes Property Owners Ass'n, Inc., 521 So.2d 939
(Ala. 1988). However, "this rule has never precluded this Court from reversing a case where the trial court erroneously applies the principles of law involved." Borland v.Sanders Lead Co., 369 So.2d 523, 526 (Ala. 1979). It is our opinion that the trial court has misapplied the law in this case.
In support of its conclusion that the deed was either not delivered to Ferris Payne or that it was delivered to him on the condition that he return it to the custody and control of the grantors, the trial court refers to specific facts it found from the evidence. We will consider each separately.
First, the trial court found that the deed of an easement across the subject property from Bart and Lucy Payne to Jefferson County, after the execution of the 1957 deed to Ferris, was proof that Bart Payne still considered himself the owner of the property. However, the trial court also held, and the defendant Marjorie Payne Carver does not dispute, that the effect of the language of the deed was to reserve in Bart Payne a life estate in the property (seeStephens v. Stephens, 280 Ala. 312, 193 So.2d 755
(1966)), which conclusion is consistent with a holding both that the deed containing the reservation was effectively delivered to the grantee *Page 570 
during the lifetime of the grantor and that the deed took effect at the moment of delivery.
The owner of a life estate does not act in derogation of the rights of the remainderman by granting an easement or right-of-way across the property — an act consistent with the interest reserved by the instant grantors. See, generally, 23 Am.Jur.2d Deeds § 162, pp. 186-87 (1983). Indeed, that a grantor reserves a life estate in the property is evidence "that an immediate conveyance of title was contemplated, on the theory that the reservation indicates an intent that title should immediately vest in the grantee." 23 Am.Jur.2d Deeds § 167, p. 189 (1983).
Another "fact" cited by the trial court is that the deed to Ferris Payne was not recorded until after the death of grantor Bart Payne. It is a familiar rule of law in Alabama, however, that, as between the parties, a deed is valid even though it is not recorded. White v. White,350 So.2d 326 (Ala. 1977); Murphree v. Smith, 291 Ala. 20,277 So.2d 327 (1973); Watson v. Watson, 283 Ala. 214,215 So.2d 290 (1968). Further, Ferris testified that despite urging from his father, he had simply neglected to have the deed recorded during his father's lifetime.
In support of its conclusion of non-delivery, the trial court points out that when the father/grantor became ill the deed was placed in a safe deposit box that was rented to grantee Ferris Payne and to grantor/mother LucyPayne, and that, on the day Bart Payne died,both Ferris Payne and his mother Lucy Payne
went to the bank to retrieve the deed from the safe deposit box. The trial court's order also states that Ferris testified that after his father gave him the deed, he (Ferris) handed the deed to his mother so that she could put it with the other important papers belonging to those living in the Payne homeplace. The trial court concluded that "the testimony of Ferris, even if believed, is insufficient as a matter of law in this instance to establish delivery in view of the evidence supporting a finding and conclusion that Bart and Lucy Payne did not intend to part with control over the deed until Bart Payne's death." We disagree.
In Strickland v. Griswold, 149 Ala. 325,43 So. 105 (1907), the defendant was the daughter of the grantor and was one of the two grantees named in the deed in issue. The deed was allegedly delivered to the defendant by her father with instructions to put it away and then deliver it to "the proper parties" after his death. The defendant lived with and took care of the grantor, his house, and his affairs until his death. In Strickland, as in the instant case, the deed, after it was delivered to the grantee/daughter, was kept in a box with other important papers belonging to the grantor/father. The Court held in favor of the grantee/daughter, relying on earlier cases that had held 1) that a deed takes effect at the moment of delivery and 2) that the delivery of a deed by the grantor to a third person,[1] with instructions to deliver the deed to the grantee at the death of the grantor, operates as a valid delivery where there is no reservation of control of the deed in the grantor.[2] The Strickland Court specifically held:
 "It matters not where the deed was kept after it was delivered to [the grantee/daughter]. The delivery, being completed, conveyed the title, though the enjoyment of the estate was postponed."
Strickland v. Griswold, 149 Ala. at 329,43 So. at 106.
In Harned v. Smoot, 306 Ky. 813, 209 S.W.2d 485
(1948), the Kentucky Court of Appeals held that once a deed is delivered to a grantee or to a third person to hold for the grantee, the delivery is not destroyed *Page 571 
because the deed is kept in a box with other papers belonging to the grantor. In Harned, as in the case now before us, the grantee lived with the grantor parents. The Kentucky court, reasoning that the box in which the deed was kept may have been a "common depository" for valuable papers of all those who lived in the grantors' home, held that there had been a valid delivery and entered its judgment in favor of the grantee.
Based on the principles of law set out inStrickland and Harned, we hold that the trial court erred in concluding that the testimony of Ferris Payne, in the context of all the evidence, was insufficient to establish delivery of the deed. Ferris's testimony, as well as that of his mother, was not only competent and admissible, but constituted undisputed evidence of Bart Payne's intent to deliver the deed to Ferris; and Ferris's possession of the deed (notwithstanding the delayed recording of that document) is presumptive evidence of delivery.
Indeed, when Bart Payne executed the deed in the notary's office in 1957 and immediately handed it to Ferris, there was nothing left to be done to effect a valid delivery. That being so, Ferris's handing the deed to Lucy Payne for safekeeping did not constitute an "undelivery" of the deed.
Similarly, we can not, under these circumstances, infer a lack of delivery from the fact that Bart, Lucy, and Ferris Payne had "equal access" to the drawer in which the family's important documents were kept, including the deed in issue here. At the time Bart and Lucy Payne executed the deed and Bart handed the deed to Ferris, Ferris was still living at home with his parents. Ferris testified that he, too, had a key to the locked drawer of the buffet where the family's important papers were kept and that he had placed other personal papers in the drawer, including his discharge from the armed forces. Further, our research has convinced us that "equal access" to a deed, as between grantor and grantee, does not support a finding of lack of delivery of the deed:
 "Where a deed was intended to be considered as delivered, it will not, as between the grantor and the grantee, be invalid for want of delivery, because of the fact that it remains in the grantor's possession. . . . . [This rule] is particularly true where the conveyance is to those naturally having claim on the grantor's bounty . . .; but there must be some act by the grantor evidencing his parting with control of the deed, accompanied with the intention to transfer title. Where the grantor reserves a life estate in the property and its possession and control, his retention of the deed is not inconsistent with the idea that a delivery was intended.
". . .
 "The fact that, after a deed has been delivered by the grantor to the grantee, the latter returns it to the former merely for the performance of some act in connection therewith does not negative the previous delivery or operate as a surrender of the title thereby acquired. So, the delivery is not necessarily invalidated by the fact that the grantor acts as a depositary for the grantee, as where the deed is returned to him for safe-keeping, or that he has access to the place where the deed is kept, or that it is kept with his private papers. . . ."
26 C.J.S. Deeds § 42, pp. 685-87 (emphasis supplied).
 "[The deed's] return to the grantor for some specific purpose, such as to record and hold as mortgagee, does not destroy the effect of the legal delivery. A fortiori, a complete delivery is not rendered ineffectual by placing the deed in a safe or safe-deposit box to which both the grantor and the grantee have access, or even in a trunk in which papers belonging to both the grantor and the grantee are kept, but to which the grantor holds the only key."
23 Am.Jur.2d Deeds § 142, p. 170 (1983).
 Conclusion
The ultimate question, then, is this: Accepting, as we must, the uncontroverted, objective, historical fact that, in 1957, the grantee's father, in the presence of the grantee's mother, physically handed the deed, executed by them, to their son, the grantee, and that the son then handed it back to his mother for safekeeping in a place equally accessible to the parents and *Page 572 
the son, does the evidence in this case present any factual basis for the legal conclusion that delivery of the deed was conditional or incomplete?
Or, stated another way, given the fact of physical delivery of the deed by the grantor/father to the grantee, do the circumstances here presented support a holding that the grantor/father did not intend his act of physical delivery to constitute a delivery as a matter of law?
The trial court's holding, that "Bart and Lucy Payne did not intend to part with control over the deed until Bart Payne's death" is based on three findings of fact: 1) equal access to the document by the grantors and the grantee; 2) the grantors' conveyance of an easement to a third party; and 3) the non-recording of the deed by the grantee.
As earlier discussed, we have examined each of these circumstances and we find them, singularly and collectively, insufficient to defeat the unconditional delivery of the deed as a matter of law. Because we find that the trial court erroneously applied the law to the undisputed facts, the judgment appealed from is reversed and this cause is remanded.
REVERSED AND REMANDED.
SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] "A valid delivery of a deed which is not to take effect until the death of the grantor may be made by giving the custody of the deed to the grantee where the grantor does not retain and reserve any right of control over it; thegrantee in such case is in no less favorable position than hewould have been had the deed been delivered to a third partyto deliver it upon the death of the grantor." 23 Am.Jur.2d Deeds § 143, p. 173 (1983) (emphasis supplied).
[2] Arrington v. Arrington, 122 Ala. 510,26 So. 152 (1898); Abney v. Moore, 106 Ala. 131, 18 So. 60
(1894); Williams v. Higgins, 69 Ala. 517
(1881).