**Elijah MOSLEY, Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 71–C–68–D.**

United States District Court,
W. D. Virginia,
Danville Division.

Sept. 5, 1972.

**2**

Elijah Mosley, pro se.

William P. Robinson, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

Petitioner was convicted of second degree murder in the Circuit Court of Charlotte County, Virginia, on December 10, 1970. He was tried by a jury which fixed his punishment at twenty years in the penitentiary.

The Supreme Court of Virginia denied his petition for a writ of error by order entered September 1, 1971.

Petitioner now seeks relief from his sentence by way of habeas corpus under 28 U.S.C. § 2241(c)(3). As grounds for relief, the substance of his petition asserts the following:

(1) That an involuntary confession was obtained from him without the giving of a proper *Miranda* warning.

(2) That the confession was obtained from him without a knowing, intelligent, and understanding waiver of his rights.

(3) That no signed waiver was introduced in evidence as required by *Miranda*.

(4) That the police wrote the confession and six days after the petitioner's arrest gave it to him to sign, although no attorney had yet been appointed to represent him.

The petitioner's petition for a writ of error to the Supreme Court of Virginia assigned the following grounds:

(1) That a confession was introduced in evidence to the petitioner's prejudice and that such a confession was an involuntary one obtained from him without a proper warning as to his rights.

(2) That such confession was obtained from petitioner without a knowing, intelligent, and understanding waiver of his rights.

While a technical inspection may reveal that grounds 3 and 4 were not presented to the Supreme Court of Virginia in their present form, the respondent has admitted that the petitioner has exhausted his state remedies, and the court will consider them.

On August 16, 1970, around 8:00 p. m., in the presence of eye witnesses who testified, petitioner shot and killed one Calvin Stovall in front of the Red Oak pool room in Charlotte County, Virginia. The next morning, Deputy Sheriff Griles went to petitioner's home, where he called petitioner out to the police car and warned him of his rights. The warning was as follows:

"Well I advised him that he had the right to remain silent and anything you say can and will be used against you in a court of law, and if you do not have and cannot afford a lawyer one will be appointed for you before any questioning, before you have to answer any questions. Then we always ask if they understand all these rights we advised them of before he make any statement."

After this warning was given to the petitioner, he told Deputy Griles that he

understood it and then proceeded to give the deputy a statement of what happened on the evening of August 16, 1970. Deputy Griles then arrested the petitioner and reduced his oral statement to writing. Deputy Griles testified that he waited six days before he asked the petitioner to sign the statement. The petitioner was in custody during those six days, but petitioner does not allege, nor is there any evidence in the record, that he was questioned or abused during his confinement, or that petitioner ever asked for or sought the advice of an attorney or anyone else. On the sixth day after his arrest, the petitioner was brought into the sheriff's office and again given a *Miranda*[1] warning. Deputy Griles then read the statement he had written on the morning of August 17, 1970, and petitioner signed it in the presence of the deputy and the sheriff. Petitioner does not allege, and there is no evidence, that there was any coercion, force, or promises made to the petitioner to get him to sign the statement.

The statement which petitioner signed is as follows:

"We were down at the pool room near the ball diamond. I came out of the door. Calvin Stovall said I knocked a beer out of his hand. I told him I was sorry if I did and would by [sic] him another beer. He said no but to give him a dollar. I told him I would not but would by [sic] him another beer. He said wait until I go over to the house and get my stuff and I will make you give me a dollar. He started to the house and turned around and came back. This is when I shot him. I did not see anything in his hand at the time."

The Commonwealth did not introduce the statement into evidence in its case in chief which was proved largely by eye witnesses. The last two sentences of the statement were used by the Commonwealth's Attorney to impeach the testimony of the petitioner after he voluntarily took the stand in his own defense and testified that he saw a knife in Calvin Stovall's hand. However, before the statement was allowed to be used for impeachment purposes, the trial judge, out of the presence of the jury, and in an abundance of caution, determined that the petitioner had voluntarily made the statement. Petitioner does not deny that he was given the warning set out above, or that he made the above statement to Deputy Griles, or that he signed it, but he claims it was involuntary because he was not properly warned of his rights and that he never made a knowing, intelligent, and understanding waiver of those rights.

Turning to petitioner's first contention that he was not properly warned of his rights, the court notes that *Miranda,* supra, does not require that any specific language be used to inform an accused what his rights are. In *Miranda,* supra, the Supreme Court held that an accused subjected to custodial interrogation ". . . must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479, 86 S.Ct. at 1630. Nowhere in its opinion did the Court state that the specific language it used had to be used to inform an accused of his rights. Thus, the only issue presented to this court by petitioner's first contention is whether or not the warning given petitioner by Deputy Griles sufficiently complied with the requirements set down by the Supreme Court in *Miranda,* supra.

In United States v. Duke, 409 F.2d 669 (4th Cir. 1969), cert. den. 397 U.S. 1062, 90 S.Ct. 1497, 25 L.Ed.2d 683 (1970), the defendant objected to the admission at his trial of statements he made to FBI agents. The defendant admitted that the *Miranda* warnings were

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4**

given, but claimed that the agents took insufficient time to explain the true meaning of the warnings to him and allow such meaning to sink in. In rejecting the defendant's claim, the court said: "As long as the suspect is clearly told and clearly understands that he need not talk, that he may consult a lawyer before deciding whether or not to talk, and that he may have one present when he talks, if he decided to talk, all of the requirements of *Miranda* are met." 409 F.2d at 670.

In United States v. Sanchez, 422 F.2d 1198, 1201 (2nd Cir. 1970), the court held sufficient an arresting officer's warning which stated that "You need make no statements without the presence of an attorney. You have the right to remain silent, that any statement you do make could be used against you. If you couldn't afford an attorney, an attorney will be provided for you, and did you understand what I said?" Thus, it is the substance of the warning which counts and not the form. *Miranda* is complied with as long as the information given the accused is sufficient to adequately inform him of his rights. United States v. Lamia, 429 F.2d 373 (2nd Cir. 1970) cert. den. 400 U.S. 907, 91 S. Ct. 150, 27 L.Ed.2d 146 (1970). United States v. Noa, 443 F.2d 144 (9th Cir. 1971).

■ The transcript of petitioner's trial indicates that the petitioner was sufficiently informed of his rights by Deputy Griles.[2] The warning given by the deputy as previously set out informed the petitioner that he had the right to remain silent, that anything he said could and would be used against him in a court of law, that he had the right to an attorney, and that if he could not afford an attorney one would be appointed for him prior to any questioning. This is all that *Miranda* requires. Thus, the court holds that the warning given petitioner by Deputy Griles was sufficient to inform him of his rights as required by *Miranda*, supra.

■ Petitioner's second contention is that he did not make a knowing, intelligent, and understanding waiver of his rights. *Miranda* does require a knowing and intelligent waiver by an accused before any statements made by him can be used against him.[3] 384 U.S. 479, 86 S.Ct. 1602. *Miranda*, however, does not require any specific form in order to have a waiver considered knowingly and intelligently made. Rather, a determination of whether there has been a sufficient waiver must be based upon the particular facts and circumstances of each case. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. den. 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968).

In *Hayes*, the court held that defendant's failure to make a statement, either written or oral, that he understood and voluntarily waived his rights after being given the appropriate warnings did not automatically render his subsequent an-

---

2. The transcript of petitioner's trial shows that the following inquiry was made by the trial judge during the hearing he had on whether or not the petitioner's statement was voluntary:

"JUDGE GATES: Let me ask you one question. Do you feel having given him this warning and then taking the statement down you reduced it to writing, then waiting six days and bring it back to him and give him the warning again, did he understand he had the right to have an attorney?

MR. GRILES: Yes, sir.

JUDGE GATES: Before the statement could be made?

MR. GRILES: I'm sure he did. I asked him if he wanted his attorney present and he understood, I'm sure.

JUDGE GATES: And do you think he understood that he had a right to remain silent?

MR. GRILES: Yes, sir.

JUDGE GATES: And that he understood that?

MR. GRILES: Yes, sir. We didn't try to push anything over on him. I talked to the boy very gently and he talked to me."

3. It should be noted, though, that this rule has been qualified by the Supreme Court in Harris v. New York, infra.

swers inadmissible. Strong and unmistakable circumstances may satisfactorily establish that an accused has made a knowing and intelligent waiver. However, the court did not set out what would constitute strong and unmistakable circumstances but left this to be determined on a case by case basis.

In United States v. Thompson, 417 F. 2d 196 (4th Cir. 1969), cert. den. 396 U. S. 1047, 90 S.Ct. 699, 24 L.Ed.2d 692 (1970), the court held defendant's oral confession admissible, although the defendant had refused to sign a written waiver. The reasons the court gave for admitting the confession were that the defendant was properly informed of his rights, stated that he understood them, was not subjected to prolonged interrogation or coerced in any way, and that defendant was intelligent and voluntarily gave his confession to the FBI agents.

■ Thus, an accused, after being properly informed of his rights, can effectively waive them by his subsequent actions. The court concludes that the record of petitioner's trial clearly shows that petitioner knowingly, intelligently, and voluntarily waived his rights and that the requirements of Miranda were met. The only evidence from which it might be inferred that petitioner did not make an intelligent waiver was the fact that he had a seventh grade education and testimony by his employer that he was a slow learner. The court does not deem this sufficient to find that petitioner was incapable of understanding Deputy Griles when he explained petitioner's rights to him. This conclusion is supported by the fact that petitioner told the deputy he understood the warning given him and then proceeded to give the deputy his statement, which the deputy reduced to writing, and then, six days after his arrest, petitioner was again informed of his rights, and he said he understood them and then signed the statement the deputy had taken from him. Also, there is no allegation nor evidence of any physical or psychological coercion nor of any prolonged interrogations. Hence, petitioner's second contention that he did not make a knowing, intelligent, and understanding waiver is also without merit.

An additional reason for holding the statement of the petitioner properly admitted into evidence is the Supreme Court's holding in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In that case, the defendant was not informed of his right to appointed counsel before he was questioned and during such questioning he made some statements which were used at his trial to impeach his credibility. The defendant did not claim that the statements were coerced or involuntary. The court held that such statements obtained from a defendant in violation of Miranda could not be used by the prosecution in its case in chief but could be used to impeach the credibility of the defendant if he voluntarily took the stand in his own defense. The Court concluded by saying, "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226, 91 S.Ct. at 646.

■■ In the present case, the petitioner does not contend, nor is there any evidence, that his statement was coerced or involuntary. So, even if the warning given petitioner by Deputy Griles had not been sufficient under Miranda and even if petitioner had not made a knowing and intelligent waiver of his Miranda rights, the trial court properly allowed the Commonwealth's Attorney to use petitioner's statement to impeach his credibility. It is true that in Harris, supra, the trial court instructed the jury that the defendant's prior inconsistent statements were to be considered only in passing on the defendant's credibility and not as evidence of guilt, whereas, no such instruction was given by the trial court in the present case. But, in Virginia, if the trial court admits evidence and the defendant wants the jury to consider it only on the issue of defendant's credibility, he must request the court to give such an instruction or

he waives an objection thereto. Roy v. Commonwealth, 191 Va. 722, 62 S.E.2d 902 (1951). In the present case, the petitioner did not request such an instruction and so the trial court was under no duty to give one. Thus, the rule set out by the Supreme Court in Harris v. New York, supra, applies to this case, and, for this additional reason, the court concluded that petitioner's contentions are not well taken.

The records before this court disclose all the pertinent factual matters necessary for the determination of petitioner's contentions. Thus, no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered consistent with this opinion.