**UNITED STATES of America,**
**Plaintiff,**

v.

**Alan H. SCHAEFFER and Patricia M. Schaeffer, Defendants.**

**No. 94 N 1114.**

United States District Court,
D. Colorado.

Aug. 5, 1999.

Mark S. Pestal, Assistant United States Attorney, Civil Division, Christopher H. La Rosa, United States Department of Justice, Trial Attorney, Tax Division, Washington, D.C., for United States.

Michael J. Abramovitz, David A. Sprecace, Abramovitz & Merriam, Denver, CO, for Patricia Schaeffer.

Alan H. Schaeffer, Highlands Ranch, Pro se.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a tax case. Plaintiff United States of America ("the Government") seeks (1) to reduce to judgment Defendant Alan H. Schaeffer's tax deficiency in the amount of $178,114.89, plus accrued interest from April 2, 1999; (2) to set aside an allegedly fraudulent transfer of real property located at 6 Wing Foot Way, Littleton, Colorado ("the Property")[1] from Mr. Schaeffer to Defendant Patricia M. Schaeffer, Mr. Schaeffer's former wife,[2] or, in the alternative, to obtain a finding that Mrs. Schaeffer holds a one-half interest in the Property as Mr. Schaeffer's nominee; (3) to foreclose federal tax liens on the Property; and (4) to obtain a deficiency judgment, if necessary, against Mr. Schaeffer. The case is before me on "United States' Motion for Summary Judgment" filed May

---

1. The Property is legally described as "Lot 3, Block 4, BURNING TREE AND COLUMBINE, FILING NO. 3, County of Arapahoe, State of Colorado." (United States' Mem. In Supp. of Mot. for Summ. J., Ex. 20 [Warranty Deed] [filed May 3, 1999] [hereinafter "Pl.'s Br."].)

2. In August 1993, Mrs. Schaeffer filed for a divorce from Mr. Schaeffer. In September 1995, the Schaeffers' divorce became final. (*Id.*, Ex. 1 [Tr. Adversary Proceeding at 66–67].)

3, 1999. Jurisdiction is based on 28 U.S.C.A. §§ 1340, 1345 (West 1993).

## FACTS[3]

On February 24, 1984, the Schaeffers acquired the Property by warranty deed as tenants-in-common. On April 11, 1985, the Internal Revenue Service ("IRS") mailed Mr. Schaeffer a Notice of Deficiency for his 1978 individual income tax liabilities. On April 12, 1985, the IRS mailed Mr. and Mrs. Schaeffer a Notice of Deficiency for their 1981 joint individual income tax liabilities. In June 1985, the Schaeffers petitioned the United States Tax Court for a redetermination of those tax liabilities.

In March 1990, the Schaeffers entered into a written, signed marital agreement which provided that Mr. Schaeffer would transfer his interest, rights, and title in the Property to Mrs. Schaeffer by a quitclaim deed for $10 consideration. After Mr. Schaeffer transferred the house to Mrs. Schaeffer, his liabilities exceeded his assets, and he became insolvent. During the period after the execution of the marital agreement until March 1993, Mr. Schaeffer continued to reside at the Property. Mr. Schaeffer continued to use the Property in an unrestricted manner, as he had prior to the execution of the marital agreement.

On March 27, 1991, the Tax Court entered two stipulated decisions regarding Mr. Schaeffer's tax liability. The first found a deficiency in Mr. Schaeffer's 1978 federal income taxes in the amount of $2208, plus certain additional charges. The second stipulated decision found a deficiency in Mr. Schaeffer's 1981 tax payments in the amount of $26,747, plus certain additional charges. Thereafter, the IRS made assessments against Mr. Schaeffer for unpaid federal income taxes, penalties, and other statutory additions in the amounts of $6691 for the 1978 taxes (as of June 24, 1991) and $89,464.44 for the 1981 taxes (as of June 17, 1991). As of April 2, 1999, there remained due and owing on those assessments the sum of $178,114.89, and interest continues to accrue on the outstanding payments. On September 27, 1991, a Form 668(Y) Notice of Federal Tax Lien was filed with the Clerk and Recorder's Office of Arapahoe County in Littleton, Colorado, with respect to the assessments made against Mr. Schaeffer for the 1978 tax year. On February 20, 1992, a second Form 668(Y) Notice of Federal Tax Lien was filed with the Clerk and Recorder's Office of Arapahoe County in Littleton, Colorado, with respect to the assessments made against Mr. Schaeffer for the 1981 tax year. On May 29, 1992, a third and final Form 668(Y) Notice of Federal Tax Lien was filed with the Clerk and Recorder's Office of Arapahoe County in Littleton, Colorado, naming Mrs. Schaeffer as a nominee of Mr. Schaeffer with respect to the assessments made against Mr. Schaeffer for the 1978 and 1981 tax years.

On May 10, 1994, the Government filed a complaint in this court, seeking to reduce Schaeffer's income tax assessments to judgment and to set aside the allegedly fraudulent transfer of the Property to his wife, or, in the alternative, to obtain a finding that Mrs. Schaeffer holds title to a one-half interest in the Property and a deficiency judgment against Mr. Schaeffer. (Compl. [filed May 10, 1994].) On September 23, 1994, Mr. Schaeffer filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District

---

**3.** Neither of the Schaeffers has responded to the Government's motion for summary judgment in any respect. In this regard, the Schaeffers have failed to comply with rule 56 of the Federal Rules of Civil Procedure and this court's Hearing, Conference, and Trial Procedures. Although rule 56(e) permits me to enter summary judgment against the Schaeffers based on their failure to respond, it allows me to do so only "if appropriate." Fed.R.Civ.P. 56(e). Accordingly, I consider the Government's legal arguments, but, having no challenge to the facts which Government asserts in its brief, I accept those facts as true to the extent that they are supported by the record.

of Colorado ("Bankruptcy Court"), effecting an automatic stay in this litigation as of October 17, 1994. On February 7, 1995, the Bankruptcy Court entered an order of discharge in favor of Mr. Schaeffer. On August 16, 1995, the Government initiated an adversary proceeding in the Bankruptcy Court ("Adversary Proceeding") by filing a complaint to determine the dischargeability of Mr. Schaeffer's 1978 and 1981 income tax liabilities under 11 U.S.C.A. § 523(a)(1)(C) (West 1993 & Supp.1999). Following a trial on the merits, on June 14, 1996, the Bankruptcy Court entered an order and judgment stating that Mr. Schaeffer's 1978 and 1981 federal income tax liability was excepted from discharge because the debt was a tax "with respect to which the debtor ... willfully attempted ... to evade or defeat such tax." *Id.*

On May 22, 1998, the Government filed a motion to reopen this case. (United States' Mot. to Reopen [filed May 22, 1998].) At a status conference on March 10, 1999, I granted the Government's motion to reopen this case. (Courtroom Mins. [filed Mar. 10, 1999].) On May 3, 1999, the Government filed a motion for summary judgment. (United States' Mot. for Summ. J. [filed May 3, 1999].) The Government argues that, as a matter of law, the tax liability assessment against Mr. Schaeffer should be reduced to judgment because the undisputed facts and the doctrine of collateral estoppel based on earlier court decisions in this matter lead to the ineluctable conclusion that Schaeffer fraudulently conveyed the Property to Mrs. Schaeffer, who was a nominee with respect to Mr. Schaeffer. (*Id.*)

## ANALYSIS

### 1. Legal Standard

Under rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

ine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works of Colorado, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary-judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Intern., Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 [10th Cir.1990]).

### 2. Reduce Assessments to Judgment

■ "For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by [26 U.S.C.A.] § 6203" and concomitant regulations. *Long v. United States,* 972 F.2d 1174, 1181 (10th Cir.1992) (citing *James v. United States,* 970 F.2d 750, 755 [10th Cir.1992]; *Gentry v. United States,* 962 F.2d 555, 557 [6th Cir.1992] [Certificate of Assessments and Payments sufficient proof of adequacy and propriety of notices and assessments ab-

sent evidence to the contrary]; *Hughes v. United States,* 953 F.2d 531, 539–40 [9th Cir.1992]; *United States v. Chila,* 871 F.2d 1015, 1017–18 [11th Cir.1989]; *United States v. Nuttall,* 713 F.Supp. 132, 135 [D. Del.] [Form 4340 establishes Government's *prima facie* case that assessment valid for purposes of summary judgment], *aff'd,* 893 F.2d 1332 [3rd Cir.1989]; *United States v. Dixon,* 672 F.Supp. 503, 505–06 [M.D.Ala. 1987] [Certificate of Assessments and Payments presumptive proof of valid assessment in absence of contrary evidence in motion for summary judgment], *aff'd,* 849 F.2d 1478 [11th Cir.1988]; *United States v. Miller,* 318 F.2d 637, 639 [7th Cir.1963] [Certificate of Assessments and Payments demonstrates that assessment made in manner prescribed and proper for district court to consider copy in ruling on motion for summary judgment]). In this case, the Government has offered certified copies of one Form 4340 Certificate of Assessments and Payments for Mr. Schaeffer for the 1978 tax period and another such form for the 1981 tax period. (Pl.'s Br., Ex. 7 [1978 Form 4340], Ex. 8 [1981 Form 4340].) I have found no evidence to rebut this presumption in the record. Indeed, by his own hand, Mr. Schaeffer admits that the Government is entitled to judgment against him for his 1978 and 1981 tax liabilities. (*Compare id.,* Ex. 4a [United States' Reqs. for Admis. Directed to Alan H. Schaeffer ¶¶ 1, 2] *with* Ex. 4b [Def.'s Resps. to "Req. for Admis." ¶¶ 1, 2 (stating "I will have to concede to these tax liabilities since a judgement [sic] has been made in federal tax court")].) On the basis of the unrebutted legal presumption and Mr. Schaeffer's admission, I find that Mr. Schaeffer was properly assessed the aforementioned tax deficiencies for 1978 and 1981.

### 3. Foreclosure

#### a. Fraudulent Conveyance

 Colorado statute provides:

Every conveyance or assignment in writing or otherwise of any estate or interest in lands … made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void.

Colo.Rev.Stat. § 38–10–117 (1999). It is also well established that, " 'where a debtor conveys lands to his wife when he is insolvent, or by the transfer is made insolvent, the husband and wife have the burden to establish by clear and satisfactory proof that the conveyance was for a valuable consideration, and without intent to hinder, delay, or defraud creditors of the husband.' " *U.S. v. Morgan,* 554 F.Supp. 582, 586 (D.Colo.1982) (quoting *Armstrong v. Fischbach,* 95 Colo. 64, 32 P.2d 828, 829 [1934]; *accord Gutheil v. Polichio,* 103 Colo. 426, 86 P.2d 972, 974 [1939]; *Thuringer v. Trafton,* 58 Colo. 250, 144 P. 866, 868 [1914]). More specifically, the transferor, must show that he did not "intentionally hinder or delay … creditors by acting with covin, malice, or for his own benefit or advantage." *Erjavec v. Herrick,* 827 P.2d 615, 618 (Colo.Ct.App.1992). If it is shown that the transferor did act with such intent, the transferee must prove that he or she did not participate in that intentional conduct or have notice or knowledge thereof. *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101, 1104 (1908). Fraud may be inferred from the facts and circumstances. *See East Plains Dev. Corp. v. King (In re Faires),* 123 B.R. 397, 402 (Bankr.D.Colo. 1991).

In this case, it is undisputed that, pursuant to the Schaeffers' marital agreement, Mr. Schaeffer conveyed his interest, rights, and title in the Property to Mrs. Schaeffer by a quitclaim deed and was made insolvent through that transfer. As the Schaeffers have offered no proof that the conveyance was not made—and there is substantial evidence in the record to

suggest that it was—I find that the Government has adequately established this element of its fraudulent conveyance claim. It is further undisputed that the United States was a creditor of Mr. Schaeffer's at the time of the conveyance. That is, by the time Mr. Schaeffer became insolvent in March 1990, he already had money due and owing on his 1978 and 1981 taxes. Further, the IRS had mailed notice to Mr. Schaeffer of the two deficiencies as early as April 1985, and five years prior to his conveyance of his interest in the Property. I find, therefore, not only that the Government was a creditor of Mr. Schaeffer at the time he made conveyed the Property to Mrs. Schaeffer, but that he was aware at that time of his tax deficiencies from 1978 and 1981.

■ Thus, there is little issue as to whether the Government satisfies the first two elements of the fraudulent conveyance statute: (1) there was a conveyance of property between Mr. and Mrs. Schaeffer, and (2) the Government was a creditor of Mr. Schaeffer at the time of the conveyance. As is often the case, however, the thornier issue is whether Mr. Schaeffer engaged in this transaction with the requisite intent. The Government asserts that the doctrine of collateral estoppel precludes relitigation of this issue. Indeed, the Bankruptcy Court found in the Adversary Proceeding that Mr. Schaeffer's conveyance of the Property was "willful," that he "used the [m]arital [a]greement and the resulting conveyance of assets to his wife to evade payment," and that "his actions were calculated to shield his wife and his assets from the IRS tax liability." *United States v. Schaeffer (In re Schaeffer)*, 201 B.R. 282, 284 (Bankr.D.Colo.1996). "Collateral estoppel precludes claims if: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the

prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Michaelson v. Michaelson*, 884 P.2d 695, 701–02 (Colo. 1991) (citing *City & County of Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 32 [Colo.1991]; *Pomeroy v. Waitkus*, 517 P.2d 396, 399 [Colo. 1974]); *see also Wilkinson v. Pitkin County Bd. of County Comm'rs*, 142 F.3d 1319, 1322 (10th Cir.1998) (citing same).

■ Because a final judgment was issued on the merits after a trial in the Adversary Proceeding and no appeal was taken thereon, the Adversary Proceeding satisfies the requirements for a "final merits judgment" and a "full and fair opportunity to litigate." The prongs of the collateral estoppel test which loom a bit larger are the "identical issue" and "privity" questions. I consider each of these in turn. In the Adversary Proceeding, the Bankruptcy Court determined whether Mr. Schaeffer's federal tax liability for 1978 and 1981 was dischargeable under 11 U.S.C.A. § 523(a)(1)(C), a statute which prohibits discharge of a debt which is a "tax" "with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax." *Id.* As noted above, the Colorado fraudulent conveyance statute prohibits conveyances "made with the intent to hinder, delay, or defraud creditors." I find little distinction between the intent issues addressed in these two statutes. Any analysis under the Colorado fraudulent conveyances statute would clearly focus on the same factual nugget which Bankruptcy Judge Cordova examined in some depth in the Adversary Proceeding: did Mr. Schaeffer transfer his interest in the Property (and a few smaller assets) under the Marital Agreement for any purpose other than to escape paying off his tax liabilities? This is precisely the issue before me, albeit under the auspices of a differently worded state statute. Therefore, I find that the issue of intent before the Bankruptcy Court is identical to

the issue of intent before me for collateral estoppel purposes.

◼ The final prong of the collateral estoppel question in this case is whether there is an identity of interest between the parties:

First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. In addition, privity has been found where there is a substantial identity between the party and nonparty, where the nonparty had a significant interest and participated in the prior action, and where the interests of the nonparty and party are so closely aligned as to be virtually representative.

*United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir.1997) (citations omitted). Plainly, Mr. Schaeffer was a party to both the Adversary Proceeding and the case before me. With regard to Mrs. Schaeffer, the Government cites the *In re Schimmels* standard and then makes the following conclusory statement:

There was a substantial identity between Mr. and Mrs. Schaeffer with respect to the issue of intent, [sic] Mrs. Schaeffer had a significant interest in the outcome of the Adversary Proceeding, and participated in that proceeding on behalf of her husband, Mrs. Schaeffer was adequately represented by her husband in the Adversary Proceeding, and Mr. and Mrs. Schaeffer shared a concurrent or successive interest in the Property.

(Pl.'s Br. at 15.) I note at the outset, that Mr. Schaeffer, at least, appears *pro se* in this action, and, therefore, is entitled to some flexibility from the court. *See Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir.1999) (noting requirement that liberal construction be afforded to *pro se* pleadings). Because Mrs. Schaeffer has not responded to the Government's motion, it is only through my own analysis of the Adversary Proceeding in light of the undisputed facts in this case that I can determine whether Mr. Schaeffer adequately represented her interests in the Adversary Proceeding. At this juncture, however, I cannot find that Mrs. Schaeffer necessarily was in privity with Mr. Schaeffer.

◼ Generally, although a judgment is binding on a nonparty "who took by transfer from a party *after* judgment or while a suit was pending, [it] is not binding on a nonparty who was involved in a transfer to or from a party *prior* to institution of the action." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4462 at 548 (1981) (emphasis supplied). In this case, the transfer was completed prior to the Adversary Proceeding. Thus, Mrs. Schaeffer neither shared a concurrent interest in the Property with Mr. Schaeffer nor adopted any responsibility for the judgment as a successive interest holder in the after-acquired judgment. Further, even assuming that the Schaeffers' shared a common interest in a finding that the conveyance was not fraudulent, their underlying interests were not necessarily identical. Unlike Mr. Schaeffer's assets, Mrs. Schaeffer's assets could not be attached following her exoneration as an "innocent spouse," by the IRS. Whatever the relevance of the Schaeffers' arguably shared interest in the martial agreement at the time it was originally created (both of the Schaeffers suggested through testimony in the Adversary Proceeding that the martial agreement was made in an effort to stave off a divorce), it is plain that Mrs. Schaeffers' had filed for divorce at the time Mr. Schaeffer filed for bankruptcy, and the Schaeffers were divorced by the time the Adversary Proceeding was filed. In these circumstances, it is possible to imagine not only that there was not a complete identity between the Schaeffers' interests, but also that there was a

potential conflict of interest. Accordingly, I find that Mr. Schaeffer is collaterally estopped from relitigating the issue of his own fraudulent intent, but Mrs. Schaeffer is not similarly bound by the earlier holding of the Adversary Proceeding.

■ Even if Mrs. Schaeffer is not collaterally estopped from arguing that she lacked the requisite intent to defraud any creditors, she has nonetheless failed to meet her burden of showing that she did not participate in Mr. Schaeffer's fraud or have notice or knowledge thereof. As I have already noted, Mr. Schaeffer indebted himself through the transfer of the Property to Mrs. Schaeffer. Accordingly, it is the Schaeffers' burden to demonstrate that the transfer was made for valuable consideration and in good faith. The ten dollars which Mrs. Schaeffer gave Mr. Schaeffer for the Property, however, was far from valuable consideration. Further, it appears that Mrs. Schaeffer was aware of Mr. Schaeffer's potential IRS liability at the time of the conveyance, as the following testimony from the Adversary Proceeding makes clear:

> Mr. Schaeffer's Counsel: And I take it you were aware of the potential IRS claim throughout this period in 1988, '89, and '90.
>
> Mrs. Schaeffer: Yes.
>
> Mr. Schaeffer's Counsel: And in fact, the IRS claim is disclosed in the marital agreement, is that correct?
>
> Mrs. Schaeffer: Right.
>
> Mr. Schaeffer's Counsel: Did you understand at that time, at the time that the agreement was executed, that you had potential liability to the IRS—
>
> Mrs. Schaeffer: Yes.
>
> Mr. Schaeffer's Counsel:—for those taxes?

(Pl.'s Br., Ex. 1 [Tr. Adversary Proceeding at 78–79].) In the absence of any other evidence, I find that Mrs. Schaeffer, like Mr. Schaeffer, had the requisite intent for a finding of liability on the Government's claim of fraudulent conveyance. Accord-

ingly, the Government's motion for summary judgment is granted with respect to its claim of fraudulent conveyance against both of the Schaeffers.

### b. Nominee

■ The final issue in this case is whether or not the Government may foreclose on the Property. The Government may foreclose on property held by a nominee of a taxpayer in order to collect the taxpayer's debt. *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 351, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977). The existence of a nominee relationship, whether analyzed under state or federal law, is determined by which party maintains substantial control over that property. *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C.Cir.1980). The following considerations are relevant in determining whether an individual or a corporation holds property as the nominee of another: (1) the lack of consideration paid by nominee; (2) the control exercised over the property by the transferor while the title is in nominee's name; (3) the close relationship between the transferor and the nominee; (4) the use by the transferor of the transferred property or funds; and (5) lack of interference in transferor's use of property by nominee. *See Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 729 (11th Cir.1989). Based on these factors, I find that Mrs. Schaeffer holds Mr. Schaeffer's interest in the Property as his nominee. I have already noted that Mrs. Schaeffer paid only a minimal consideration for the Property. In addition, it is undisputed that Mr. Schaeffer continued to enjoy unrestricted use of the Property after the alleged transfer, and the Schaeffers were married with children at the time of the transfer and for some years thereafter. Accordingly, that property may be foreclosed upon by the Government.

### 4. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. The Government's motion for summary judgment is GRANTED.

2. The federal tax liens against the Property legally described as "Lot 3, Block 4, BURNING TREE AND COLUMBINE, FILING NO. 3, County of Arapahoe, State of Colorado," shall be foreclosed, thereby reducing to judgment Mr. Schaeffer's personal federal income tax liability.