[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10531

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 8, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-00695-CV-1-WS-B

LISA CLEWIS MAY,

                                        Plaintiff-Appellant,

    versus


UNITED STATES OF AMERICA,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Alabama

_____

**(November 8, 2007)**

Before MARCUS, PRYOR, Circuit Judges, and HANCOCK,* District Judge.

PER CURIAM:

    In this action to quiet title on two related parcels of land in Magnolia Springs,

_____

    * Honorable James Hughes Hancock, United States District Judge for the Northern District of Alabama, sitting by designation.

Alabama, Lisa Clewis May appeals from a final order of summary judgment entered in favor of the United States of America. The district court concluded that a federal tax lien attached to the residence of Lisa May and her husband James May, a delinquent taxpayer, even though the property was titled solely in Lisa May's name because she held title as her husband's nominee. After thorough review, we affirm based upon the district court's comprehensive and well-reasoned opinion of September 6, 2006. May v. A Parcel of Land, 458 F. Supp. 2d 1324 (S.D. Ala. 2006). We add these observations.

We review the district court's entry of summary judgment de novo, "applying the same legal standards as the district court did and viewing all of the facts in the light most favorable to the non-moving party." Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004). Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under the Tax Code, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The language of that statute "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer

2

might have." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." Id. (quoting Glass City Bank v. United States, 326 U.S. 265, 267 (1945)).

"Property" and "rights to property" for the purposes of 26 U.S.C. § 6321 include "not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer." Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005); Holman v. United States, -- F.3d --, 2007 WL 2823480, at *4 (10th Cir. Oct. 1, 2007) (quoting Spotts for that principle with approval and holding that an actual transfer of title between the nominee and delinquent taxpayer is not required for the imposition of a nominee lien); Macklin v. United States, 300 F.3d 814, 818 n.2 (7th Cir. 2002) ("In the case of a nominee lien, the IRS proceeds against an alter ego or nominee of a delinquent taxpayer for the purposes of satisfying the taxpayer's obligations.") (internal quotation marks omitted).

"A nominee is one who holds bare legal title to property for the benefit of another." Scoville v. United States, 250 F.3d 1198, 1202 (8th Cir. 2001) (citing Black's Law Dictionary (7th ed. 1999)); see also United States v. Gilbert, 244 F.3d

3

888, 902 n.37 (11th Cir. 2001) ("[N]ominee in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him.") (internal quotation marks omitted). The nominee theory has been utilized by the Eleventh Circuit for the purposes of imposing federal tax liens; it focuses on the delinquent taxpayer's relationship to the property, because the "[p]roperty of the nominee . . . of a taxpayer is subject to the collection of the taxpayer's tax liability." Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989).

Since the federal tax lien statute "itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law," we are obliged to "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." United States v. Craft, 535 U.S. 274, 278 (2002) (internal quotation marks and citations omitted). As the district court pointed out, under Alabama law, an individual has rights to property titled in his spouse's name when that individual has the "real intent," as "reflected in the conditions and circumstances attending the transaction," to be the beneficial owner

4

of the property. Cone v. Cone, 331 So.2d 656, 658 (Ala. 1976) (internal quotation marks omitted); Taylor v. Peoples Fertilizer Co., 117 So.2d 180, 188 (Ala. 1959) (holding individual who transferred property title to spouse had rights to that property because his real intent in making the transfer was to prevent creditors from levying on the property); see also McLain v. McLain, 409 So.2d 852, 854 (Ala. Civ. App. 1981) (finding an individual had rights to property after transferring title to spouse because the individual continued to reside at the property and it appeared his real intent in transferring title was to effect a marital reconciliation); Cox v. Cox, 395 So.2d 1027, 1029-30 (Ala. Civ. App. 1981) (finding an individual had rights to property after transferring title to spouse because the real intent of the transfer was to preclude a former spouse from obtaining a lien on the property).

However, since Alabama law fails to delineate a test for determining the "real intent" of a title transfer between spouses, we are guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship. See Battle v. United States, No. 9:06CV109, 2007 WL 1424553, at *5 (E.D. Tex. Feb. 7, 2007) ("As noted by the Government, however, Texas courts have not set forth factors for determining whether an entity is a nominee of another. When Texas law applies to an issue, but Texas law does not address that issue, federal courts will look to federal law for guidance."); Cody v. United States, 348 F. Supp.

5

2d 682, 694 (E.D.Va. 2004) ("[F]ederal courts sitting in states whose law of nominee ownership is similarly undeveloped have typically looked to nominee ownership criteria employed in other federal tax collection cases."); Towe Antique Ford Found. v. I.R.S. Dep't of Treasury, United States, 791 F. Supp. 1450, 1454 (D. Mont. 1992), aff'd on other grounds, 999 F.2d 1387 (9th Cir. 1993) (applying case law from other jurisdictions because state law did not set forth what factors would be used to determine when a nominee relationship arises); cf. Grippo v. Perazzo, 357 F.3d 1218, 1222 (11th Cir. 2004) ("Because Florida law does not answer the question that we examine today, we look to federal law for guidance.").

Viewing the evidence in the light most favorable to Lisa May, the district court determined that she is the nominee of James May regarding the two parcels of land in Magnolia Springs, Alabama. On this undisputed record, we agree. First, Lisa May paid no consideration in exchange for the transfer of title to her name; in fact, James May paid the entire $9,000 consideration for the title transfer. See, e.g., Scoville, 250 F.3d at 1202, Towe Antique Ford Found., 791 F. Supp. at 1454; Baum Hydraulics Corp. v. United States, 280 F. Supp. 2d 910, 917 n.14 (D. Neb. 2003); Cody, 348 F. Supp. 2d at 694-95; United States v. Towne, 406 F. Supp. 2d 928, 937 (N.D. Ill. 2005), aff'd sub. nom. United States v. Swan, 467 F.3d 655 (7th Cir. 2006). Second, James May used his personal funds to purchase the property, have the title transferred

6

from his former wife to Lisa May, make all mortgage payments on the property, pay all property taxes, pay all utility bills, and pay for all renovations and repairs to the property. See e.g., Cody, 348 F. Supp. 2d at 694-95; Baum Hydraulics Corp., 280 F. Supp. 2d at 917 n.14. Third, the evidence is undisputed that James May has enjoyed full beneficial ownership and control over the property since 1985; not only has he resided uninterrupted on the property for over two decades, he has also mortgaged the property in his name and controlled and provided all of the finances necessary to maintain and renovate the property. See, e.g., Shades Ridge, 888 F.2d at 729; Scoville, 250 F.3d at 1202; Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000); Towe Antique Ford Found., 791 F. Supp. at 1454; Cody, 348 F. Supp. 2d at 694-95. Fourth, James May and Lisa May, as a co-habitating married couple raising two children, have a close relationship. See, e.g., Scoville, 250 F.3d at 1202; Towe Antique Ford Found., 791 F. Supp. at 1454; Cody, 348 F. Supp. 2d at 694-95. Finally, there is no evidence that James May's use of the property has been restricted or interfered with in any way. See, e.g., Cody, 348 F. Supp. 2d at 694-95; United States v. Schaeffer, 245 B.R. 407, 415 (D. Colo. 1999); Simpson v. United States, Nos. 87-526-CIV-J-12, 87-837-CIV-J-12, 1989 WL 73212, at *6 (M.D. Fla. Apr. 6, 1989). As a result, James May has rights to the property (and is a beneficial owner) under Alabama law notwithstanding that the property is titled solely in the

7

name of Lisa May. On this undisputed record, the district court properly concluded that, because Lisa May is James May's nominee, a federal tax lien arising out of his indebtedness may attach to the property. In short, we can find no error in the district court's grant of final summary judgment and, accordingly, affirm.

**AFFIRMED.**